**BURCH & CRACCHIOLO, P.A.**
702 E. OSBORN ROAD, SUITE 200
PHOENIX, AZ 85014
TELEPHONE 602.274.7611

Andrew Abraham, SBA #007322
aabraham@bcattorneys.com
John D. Curtis, II, SBA #019726
jcurtis@bcattorneys.com
*Attorneys for RSI Enterprises, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SHAWNA SHIELDS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONORA QUEST LABORATORIES, LLC and RSI ENTERPRISES, INC.,<br><br>Defendants. | Case No. 2:15-cv-00723-SPL<br><br>RSI ENTERPRISES, INC'S MOTION FOR SUMMARY JUDGMENT<br><br>(Assigned to Honorable Steven P. Logan) |

Defendants RSI Enterprises, Inc. ("RSI") hereby moves for summary judgment on Plaintiff Shawna Shields's claims against it. This Motion is supported by the following Memorandum of Points and Authorities and Separate Statement of Facts filed herewith.

I.  **Summary**

RSI is entitled to summary judgment as to all of Plaintiff's claims against it for four distinct and independent reasons:

1. Plaintiff gave prior express consent directly to Defendant Sonora Quest Laboratories, Inc.("SQL") to be called regarding her unpaid balances for services performed by SQL and this consent insulates RSI from liability under the TCPA;

2. Plaintiff gave prior express consent directly to RSI when she called RSI on July 28, 2010 respecting a SQL debt and asked RSI to call her back at the cell phone number at issue;

3. RSI reasonably relied in good faith on its understanding that SQL had obtained prior express consent from Plaintiff to be called regarding her unpaid debts to SQL; and

4. Plaintiff has failed to produce evidence that she suffered a concrete harm sufficient to confer standing, thus this Court lacks subject matter jurisdiction over Plaintiff's claims.

## II. Relevant Facts

RSI is a debt collection agency with its headquarters in Phoenix, Arizona. RSI has an agreement with Sonora Quest Laboratories, LLC ("SQL") to assist it in collecting monies for services rendered for which it has not been paid. [RSI-SOF at ¶ 1.][1] RSI is not a telemarketer; it does not randomly call individuals seeking to sell them products or services. *Id.* RSI only collects debts for clients that have some type of business relationship with the debtor that result in a debt being incurred. *Id.* RSI's policy and practice throughout the relevant time period of this lawsuit was not to call debtors more than once every two weeks. *Id.* RSI relies on SQL for the debtors' contact information. *Id.* With respect to SQL delinquent accounts, RSI does not search public databases to ascertain contact information for the debtor, unless the information provided by SQL is inaccurate or outdated. *Id.*

RSI engages in a two step-collection process. The first step for collecting SQL debts is to act on SQL's behalf by sending a "pre-collection" letter to the debtor identifying that there is an outstanding balance and requesting that the debtor call to answer any questions they have about the debt or to pay it off. [RSI-SOF at ¶ 2.] These accounts are identified by RSI as SONX accounts, indicating that they are not yet considered bad debt. *Id.* If no response is received to the initial letter, the debtor is added to a calling campaign and called either using an auto-dialer or a live person; if they do not answer, a message is left to call RSI. *Id.* If there is still no response, a second written notice is sent. *Id.* If there is still no response, additional calls are made using an auto-dialer or live person. *Id.*

---

[1] References to "RSI-SOF at ¶ ___" are to RSI's Separate Statement of Facts filed herewith.

2

1     As a result of these pre-collection letters and phone calls, RSI often receives communications from SQL patients regarding their invoices. [RSI-SOF at ¶ 3.] If those communications are via telephone, RSI notes the substance of those communications in the account log associated with that account. *Id.* Patients sometimes provide a particular phone number at which they ask to be called as part of that process. *Id.* If the debt is not satisfied within 3-4 months, the debt is typically designated bad debt by SQL and referred to RSI for collection. *Id.* Bad debt accounts are identified by RSI as SONXBD. *Id.*

    RSI initiates each bad debt collection attempt by sending the debtor at least one letter to the address provided by the creditor, in this case SQL. [RSI-SOF at ¶ 4.] If no response is received to the written correspondence, RSI typically places the debt into a telephone calling campaign to be called either by a live person or using its auto-dialer. *Id.* The phone numbers used by RSI to make those calls are taken from the XIFIN database made available to RSI by SQL. *Id.* Each action that RSI takes to collect a debt is recorded in its account notes. *Id.* at ¶ 9. At the bad debt phase of the process, patients occasionally send written correspondence to RSI concerning their debt. *Id.* Some of these letters provide new contact information for the patient, including a new phone number where they wish to be called. *Id.*

    Under the Fair Debt Collection Practices Act, a debtor has the right to seek "verification" of the debt sought to be collected. *See* 15 U.S.C. § 1692(g). When a debtor asks to have an SQL debt verified, an RSI employee contacts SQL and asks for information about the debt. [RSI-SOF at ¶ 5.] If the debtor wants verification of the debt that contains the debtor's signature – as opposed to an itemized invoice – SQL provides RSI with its Patient Verification Form. *Id.* This form contains the contact information for the debtor/guarantor, including their phone number, and is signed by the debtor. *Id.* In this case, when RSI sought information from SQL after the present lawsuit was served to confirm that SQL had obtained Plaintiff's prior express consent to be called on her cell phone, RSI was provided with a form that identified Ms. Shield's

phone number as the -0635 number that RSI called and it contained Plaintiff's printed name and her signature at the bottom. *Id.*

RSI's understanding of SQL's internal procedures is that the individual receiving SQL's services always signs such a document. [RSI-SOF at ¶ 6.] RSI always believed that each person receiving the SQL services, which RSI was seeking to collect, had provided the contact phone number that SQL then passed on to RSI through the XIFIN system and that each recipient of SQL services had signed or otherwise approved a document at SQL verifying that their contact information, including their phone number, was accurate. *Id.* RSI always considered the signed Patient Verification Form containing the debtor's phone number as express consent to be contacted at the phone number and address listed on the Patient Verification Form. *Id.*

Ms. Shield's acknowledges that when she would get her blood drawn by SQL, she would sign a document verifying that the information presented to her by SQL was accurate. [RSI-SOF at ¶ 7.] By providing her cell phone number to her primary care physician, Ms. Shield's expected that she would be contacted at the cell phone number provided. *Id.* When asked how she expected to be contacted by SQL if there was an issue with the billing, Ms. Shields claimed that she had no understanding as to how she would be contacted. *Id.* However, from at least 2011 to the present, the only way to speak directly to Ms. Shield's was by calling her cell phone. *Id.* She had no landline. *Id.* Although, Ms. Shields was aware through her work at her current counsel's law firm that she had the right to request that she no longer be called or contacted by RSI, she did not instruct RSI to stop calling her at the -0365 number. *Id.*; 15 U.S.C. § 1692(c).

//
//
//
//
//

### III. Discussion

#### A. Shields Consented to Be Called on Her Cell Phone.

1. Shields Gave Express Consent to SQL to Be Called on Her Cell Phone, Which Makes Collection Calls By RSI Using Pre-Recorded Voices or Auto-Dialers to Recover the SQL Debt Permissible Under the TCPA.

For the reason set forth in SQL's Motions for Summary Judgment, which RSI hereby joins and incorporates by this reference, Shields gave express consent to SQL to call her on her cell phone to discuss, among other things, her unpaid invoices. Giving a creditor your cell phone number constitutes express consent to be called at that number. *See Baisden v. Credit Adjustments*, Inc., 813 F.3d 338, 342-43 (6th Cir. 2016) *citing In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559 (2008); *Schwartz-Earp v. Advanced Call Ctr. Techs., LLC*, 2016 WL 899149, at *7 (N.D. Cal. Mar. 9, 2016) ("the vast majority of cases to address the issue have held that a customer who provides her telephone number to another party consents to receive calls or texts from that party.") *citing Reardon v. Uber Techs, Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (collecting cases). It is also well-established that a debt collector may rely on express consent given to the creditor and does not need to obtain consent for itself. *Baisden*, 813 at 346; *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1122 (11th Cir. 2014).

2. Shields Gave Express Consent to RSI to Call Her on Her Cell Phone When She Called RSI on July 28, 2010 and Asked to Be Called Back at XXX-XXX-0635.

RSI sometimes obtains phone numbers directly from debtors during the pre-collection or bad debt collection process, when patients voluntarily give their phone numbers to RSI staff by phone or on correspondence. [RSI-SOF at ¶ 8.] Ms. Shields, as the recipient of services from SQL or as the guarantor of such services for family members, had several delinquent accounts that were referred to RSI for collections between June 2010 and January 2014. *Id*. On the initial delinquent account, Shields spoke with an agent from RSI on July 28, 2010. *Id*. At that time, she promised to make

a $30 payment and asked to be called back several days later. *Id.* RSI called Shields back at the -0635 number two days later, but she did not answer. *Id.* By providing her cell phone number and asking to be called back at that number, Shields consented to being called. *See Baisden,* 813 F.3d at 342-43 *citing In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559 (2008); *Schwartz-Earp,* 2016 WL 899149 at *7 ; *Reardon,* 115 F. Supp. 3d at 1097. RSI has no record that Shields ever contacted RSI to rescind her express consent to be contacted at the -0635 number. [RSI-SOF at ¶ 9.] Shields testified at her deposition that the only phone number she possessed since 2011 was the -0635 number. *Id.*

All of Shields' claimed violations of the TCPA by RSI occurred after she gave RSI express consent to call her at the -0625 number on July 28, 2010. Thus, RSI had express consent from Ms. Shield's to call her at the -0635 number with respect to SQL debts for each call by RSI that she now alleges were violations of the TCPA. Accordingly, RSI is entitled to summary judgment on all of Ms. Shields' claims, because she gave RSI prior express consent to be called on her cell phone and never revoked such consent.

**B. <u>RSI Relied in Good Faith on SQL to Establish Express Consent.</u>**

RSI had a good faith belief that the debtors SQL inputted into the XIFIN system for RSI to contact had expressly consented to be called at the number provided to RSI by SQL. When RSI sought verification of the debt from SQL, RSI was provided the Patient Verification Form signed by the patient, if the patient requested proof of signature. [RSI-SOF at ¶ 10.] RSI understood that a form containing the debtor's phone number and other demographic information was contained in SQL's files and that this form contained the same contact information that SQL provided to RSI through the XIFIN system. *Id.*

RSI relies on SQL's records to establish prior express consent to be called. *Id.* All contact information about an SQL debtor, like Plaintiff, comes to RSI through the XIFIN system. *Id.* When the debtor requests verification of a debt, RSI obtains

documents from SQL, like the Patient Verification Form. *Id.* In sum, RSI relies on SQL to obtain prior express consent from the debtor to be called regarding their SQL indebtedness. RSI's reliance is reasonable in light of the Patient Verification Form that contains the same information provided to RSI through XIFIN system and bears the signature of the debtor. No evidence has been produced in this case that SQL regularly or routinely fails to obtain or verify its patients contact information. To the contrary, the only evidence is that SQL always does so. *See* SQL Motion for Summary Judgment and Separate Statement of Facts filed this date.

A recent California federal district court ruling is directly on point. In *Chyba v. First Financial Asset Management, Inc.,* 2014 WL 1744136 (S.D. Cal. 2014), *appeal dismissed*, the trial court granted the defendant debt collector's motion for summary judgment dismissing the plaintiff's TCPA claims, even though the court found that there was a fact dispute respecting whether the plaintiff gave prior express consent to be called to the creditor, who then passed on the information to the defendant debt collector. The court reasoned that:

> [A]lthough Plaintiff did not give consent directly to Defendant to call her cell phone number, it is sufficient that Defendant has a good-faith basis to believe that Plaintiff had provided consent to the creditor on whose behalf Defendant sought to collect a debt. Even if Plaintiff is correct in stating that she never gave Defendant or Enterprise [the creditor] consent to call, and there was no *actual* prior consent from Plaintiff, Defendant is not liable for acting in good faith upon the information provided to it.

*Id.* at *12 (*emphasis in original*)

The *Chyba* court cited to *Clark v. Capital Credit & Collection Services*, 460 F.3d 1162, 1174 (9th Cir. 2005) for the proposition that "a debt collector was entitled to rely on the creditor statements to verify the debt [and] provided by a creditor who had been accurate in the past." *Id.* at *11. The trial court reasoned that because a debt collector could reasonably rely on the creditor for information about the debtor and had no independent obligation to verify the accuracy of that information, "[i]t would be incongruous with the larger statutory and regulatory scheme to interpret TCPA to

7

require that a debt collector be liable for acting where it had a good-faith basis for doing so." *Id.*

Another recent federal district court also affirmed the existence of a good faith defense to TCPA claims. In *Danehy v. Warner Cable Enterprises, LLC*, the trial court affirmed a magistrate's recommendation that a debt collector's motion for summary judgment be granted based on the availability of a good faith defense for debt collectors who "in good faith relied on the consent of its customer" and "good faith belief of consent is a complete defense to both plaintiff's [TCPA] claims." 2015 WL 5534285 *3 (E.D.N.C. 2015).

The facts in the present case are even more compelling than those in *Chyba* and *Danehy*. Here, RSI had actual knowledge that the demographic information it received from SQL was either provided to SQL directly from the debtor or the debtor verified the demographic information each time service was rendered. SOF at ¶¶ 5-6. It is difficult to imagine what else RSI could do to confirm that SQL patients had provided prior express consent to be called at the phone number SQL provided to RSI. Accordingly, for this alternative reason, Plaintiff's claims against RSI should be dismiss in their entirety based on RSI's reasonable good faith belief that Plaintiff had provided prior express consent to be called at the -0365 number to SQL respecting unpaid debts for services rendered by SQL.

### C. **Plaintiff Lacks Standing and Thus This Court Lacks Subject Matter Jurisdiction Because Plaintiff Has Not Alleged Or Produced Any Evidence of a Concrete Harm Resulting From Receiving Recorded Messages or Auto-Dialed Calls from RSI.**

The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* "[T]he 'irreducible constitutional minimum' of

standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (internal citations omitted).

The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.' " *Spokeo*, 136 S.Ct. at 1547–48 (quoting *Raines*, 521 U.S. at 820, n. 3, 117 S.Ct. 2312). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). " 'For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.' " *Id.* (quoting *Lujan*, 504 U.S. at 560, n. 1, 112 S.Ct. 2130). Meanwhile, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. *Id.*

There is no fact dispute that Plaintiff did not suffer any actual harm as a result of the calls to her cell phone by RSI. Plaintiff confirmed the lack of any such harm in the

damages section of her Rule 26 disclosure statement, where the sum total of her damages are the statutory damages created by the TCPA: "Plaintiff claims statutory damages, on behalf of herself and for the putative class members, under the Telephone Consumer Protection Act at 47 U.S.C. § 227(b)(3) in the amount of $500 to $1,500 for each call Defendants placed in violation of the Act." [RSI-SOF at ¶ 11.] Likewise, in response to a request for admission asking her to admit that she suffered no actual harm, Plaintiff denied the request for admission, but responded: "Plaintiff admits that she does not seek 'to recover actual monetary loss' under 47 U.S.C. § 227(b)(3)(B), but rather only seeks 'to receive $500 for each such violation on behalf of herself and the putative class members she seeks to represent.'" *Id.* Finally, when asked at her deposition to identify how she had been harmed by the collection calls from RSI, she admitted that she could not identify any harm. *Id.*

Under the standard recently-articulated in *Spokeo*, Plaintiff has not, and cannot, meet her burden to prove that this Court has subject matter jurisdiction over her claims. She relies exclusively on the TCPA's grant of a private cause of action to establish injury-in-fact. The Supreme Court made clear that Congress cannot confer standing. There must be an actual concrete harm alleged and proved to invoke this Court's jurisdiction. Plaintiff has completely failed to produce any such evidence.

In one of the few post-*Spokeo* rulings on this issue, a judge in the Southern District of California granted the defendant's <u>motion to dismiss</u> a TCPA claim based on the plaintiff's failure to establish her standing to sue and thus the federal court's subject matter jurisdiction. *See Romero v. Department Stores National Bank*, 15-CV-193-CAB-MDD (S.D. Cal. 8/5/2016) at 4-12. In *Romero*, the creditor had called the plaintiff 290 times using an automated telephone dialing system over the course of six months. *Id.* at 1. In her complaint, the plaintiff alleged that she suffered physical and emotional harm, including headaches, back, neck and shoulder pain, loss of appetite and weight loss. *Id.* at 2.

The *Romero* court held that because each call to the plaintiff by the debt collector

is a separate claim with its own damages, the plaintiff was required to prove she had an "injury-in-fact" for each call that she alleged was a violation of the TCPA. *Id.* at 5. The court summarily dismissed the TCPA claims arising out of calls that the plaintiff was unaware of because "none of the alleged injuries in fact are plausible or could be traceable to the alleged TCPA violation. *Id.* at 7. The court also dismissed the calls that the plaintiff heard ring, but did not answer, because "[n]o reasonable juror could find that one unanswered telephone call could cause lost time, aggravation, distress or any injury sufficient to establish standing." *Id.* at 8. The court also dismissed the claims for the two calls that the plaintiff alleged she did answer, because the "[p]laintiff does not offer any evidence that the use of an [auto-dialer] to dial her number caused her greater lost time, aggravation and distress than she would have suffered had the calls she answered been dialed manually, which would not have violated the TCPA." *Id.*

A similar conclusion was reached in *Sartin v. EFK Diagnostics*, 2016 WL 3598297 (E.D. La. July 5, 2016). In that case, the TCPA complaint was dismissed with leave to amend because the plaintiff made only the barest of allegation of actual damages. *Id.* at *3. Relying on *Spokeo*, the court concluded that mere conclusory allegations are insufficient to create Article III standing. *Id. citing Anjelino v. New York Times Co.,* 200 F.3d 73, 88 (3rd Cir. 1999) ("Standing is established at the pleading stage by setting forth [, *inter alia*] specific facts that indicate the party has been injured in fact or that injury is imminent...."). Likewise, in *Smith v. Altima Medical Equipment, Inc.*, the court granted a motion to dismiss a TCPA claim based on lack of standing, although the plaintiff specifically alleged "multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing phone calls. . . ."2016 WL 4618780 at *3 (C.D. Cal. July 29, 2016). The court reasoned that "'[t]he injury is too *de minimus* to satisfy the standing doctrine's core aim of improving judicial decision-making by ensuring that there is a specific controversy before the court and that there is an advocate with sufficient personal concern to effectively litigate the matter.'" *Id.*

quoting *Caldwell v. Caldwell*, 545 F.3d 1126, 1134 (9th Cir. 2008).[2]

At the summary judgment stage, Plaintiff must produce some evidence that she suffered an actual concrete harm as a result of RSI's calls. Although given ample opportunity, Plaintiff produced no such evidence and specifically disavowed that she had suffered any of the harm that was at least alleged in *Romero and Smith*. Nor has Plaintiff provided any evidence linking any harm that she may have suffered from RSI's collection calls to any particular phone call. She, therefore, also cannot meet the requirement that her injuries be "fairly traceable to challenged conduct of the defendant." *See Lujan* at 560–61, 112 S.Ct. 2130.

This case falls squarely within the holding in *Spokeo* that the mere violation of a federal statute, without some actual concrete harm, is insufficient to satisfy the Article III standing requirement. Because Plaintiff has failed to allege or prove any concrete harm whatsoever caused by the alleged unauthorized calls to her cell phone, this Court lacks subject matter jurisdiction over all of her TCPA claims and they must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant RSI Enterprises, Inc. respectfully requests that Plaintiff Shawna Shields' claims against it be dismissed in their entirety.

DATED this 11th day of October, 2016.

**BURCH & CRACCHIOLO, P.A.**

By */s/ John D. Curtis, II*
Andrew Abraham
Jake D. Curtis
702 E. Osborn Road, Suite 200
Phoenix, AZ 85014
***Attorneys for RSI Enterprises, Inc.***

---

[2] *But cf. Booth v. Appstack, Inc.*, 2016 WL 3030256 (W.D. Wash. May 25, 2016) (finding that the waste of time suffered by the plaintiff to answer or address the calls is sufficient to confer standing); *Juarez v. Citibank, N.A.*, 2016 WL 4547914 (N.D. Cal. September 1, 2016) (same).

12

1 | I hereby certify that on October 11, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By: *Jennine L. Warburton*